[Civil No. 3645.   Filed July 1, 1935.]

[46 Pac. (2d) 1077.]

Y. C. WHITE, as Superintendent of Banks of the State of Arizona and Ex-officio Receiver of United Bank & Trust Company, an Insolvent Banking Corporation, Appellant, v. THAD M. MOORE, FRANK LUKE and D. C. O'NEIL, as Members of and Constituting the State Tax Commission of Arizona, Appellees.

Mr. Allan K. Perry, Mr. Evo De Concini and Mr. Lloyd J. Andrews, for Appellant, and Messrs. Strouss & Salmon (of Counsel).

Mr. John L. Sullivan, Attorney General, and Mr. Dudley W. Windes, Assistant Attorney General, for Appellees.

McALISTER, J.—Y. C. White, as superintendent of banks of the state of Arizona and *ex-officio* receiver of the United Bank & Trust Company, an insolvent corporation, brought an action in the superior court of Maricopa county against Thad Moore, Frank Luke and D. C. O'Neil, as members of the state tax commission of Arizona, and alleged in substance that in his capacity as receiver he is liquidating the assets of the United Bank & Trust Company and that as such he has under his control certain real properties within the state, among which is a building in Tucson, Arizona, known as the United Bank building, containing several storerooms and offices that he is renting to different persons for mercantile and office purposes; that the defendant tax commissioners have requested payment of a 2 per cent. sales tax on the rentals from this building, but that it is not, as he

understands the excise revenue act of 1935 passed by the Twelfth Legislature, his duty to comply with this request; that a controversy exists between him and the commission as to the validity, meaning and applicability of the pertinent provisions of that enactment and that a declaratory judgment will terminate it. He prays for a judgment of this nature establishing and decreeing that the terms of that act do not apply to rentals received from offices and storerooms and particularly to those rentals coming into the hands of a receiver who is merely liquidating the assets of an insolvent bank.

By way of answer the tax commission, after denying specifically the principal allegations, alleged affirmatively that the plaintiff is, within the meaning of the excise revenue act of 1935, engaged in the business of charging rents; that the provisions of that act relating to the taxation of rentals apply to those rentals collected by a receiver of an insolvent bank; and that the rents received from offices and storerooms are subject to taxation under the provisions of the act.

Following the filing of an answer the plaintiff moved for judgment on the pleadings and the court, after duly considering the matter, denied the motion and rendered judgment declaring in effect that the construction placed upon the pertinent provisions of the excise revenue act of 1935 by the defendant is correct, and the plaintiff by this appeal asks this court to review that holding.

That act appears in the Session Laws of the Twelfth Legislature as chapter 77, and the provisions of it that give rise to the controversy involved in this appeal are subsection (g) of section 1, entitled "Definitions"; and subdivision two of subsection (f) of section 2, entitled "Imposition of the tax." The first of these reads as follows:

"(g) The term 'business' when used in this article shall include all activities or acts engaged in (personal and corporate), or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but shall not include casual activities or sales."

The second is in this language:

"Sec. 2. *Imposition of the tax.* From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission for the purpose of raising public money to be used in liquidating the outstanding obligations of the state government and to aid in defraying the necessary and ordinary expenses of the state and to reduce or eliminate the annual tax levy on property for state purposes and to reduce the levy on property for public school education to the extent hereinafter provided, annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule: . . .

"(f) At an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses: . . .

"2. Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, automobile rental services, automobile storage garages, parking lots, tourist camps or any other business or occupation charging storage fees or rents and adjustment and credit bureaus and collection agencies."

The only assignment is that the court erred in entering judgment on the pleadings for appellee, the tax commission, though appellant gives three reasons why this was error and argues each under separate propositions of law. He urges first that a receiver, in renting property belonging to the estate of an insolvent bank, as an incident to the receiver-

ship, is not engaged in the business or occupation of charging rent, "with the object of gain, benefit or advantage," as this term is used in subsection (g), *supra*. It is true that the tax imposed by this act is not a property tax, but is rather in the nature of a license fee for the privilege of engaging in business within the state and that a receiver, who is merely liquidating the assets of an insolvent bank for the benefit of its creditors under the supervision and control of the court, is not engaged in the banking business but simply winding up the affairs of the bank in such a way as to salvage the most possible from the wreckage for the creditors. To require a receiver under these circumstances to obtain a license from the tax commission to carry to the end the work of the receivership is, appellant contends, absurd.

It occurs to us, however, that if a solvent bank may be held to be engaged in the business of charging rents for the purpose of "gain, benefit or advantage" when managing an office building it owns and for this reason may be required to pay a 2 per cent. sales tax on the rentals it receives from that building, notwithstanding the fact that charging and collecting rentals is merely incidental to its main business of banking, one who, in handling the affairs of the bank after insolvency, is compelled to charge and collect rentals on that building is also engaged in the business of charging rentals and, therefore, subject to the provisions of the excise revenue act. Leasing the space and collecting the rentals therefor, even though the bank is no longer a going concern, continues until the process of liquidation is completed or the building disposed of, the only difference being that these acts are performed by the receiver, rather than by the bank officials, and that those who benefit from them are the creditors of the bank instead of its stockholders. The fact that charging and collecting

rents is merely incidental to the business of liquidating the bank, and does not itself constitute the principal business in which the receiver is engaged, does not mean that it is not a business within the spirit and purpose of the excise revenue tax any more than the fact that it was only incidental to the business of banking during solvency would have had this effect. Clearly there could be no claim that, due to the fact that the assets of the bank are being liquidated, the receiver is not required to pay the property tax on the building, yet there is little, if any, difference between that situation and the one presented by the facts of this case.

■■ The principal question presented by the appeal, however, is that, even though the receiver of a bank in liquidating its affairs sustains the same relation to the matter of the payment of the sales tax on rentals collected from the occupants of the building in question that the officials of the bank did prior to insolvency, or would have had the law been in existence at that time, he is still not liable for this tax because the provisions of the act requiring those engaged in the business or occupation of charging rents with the ''object of gain, benefit or advantage'' to pay a tax on the gross income from rents do not apply to the income received from the rents of storerooms or office buildings. This contention is based upon the language of subdivision 2 of subsection (f) of section 2, *supra,* which enumerates the businesses and occupations on the gross income from which the sales tax of 2 per cent. must be paid and the construction, it is claimed, the rule of *ejusdem generis* requires to be placed thereon. That doctrine, briefly stated, is that ''where general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature

or class of those enumerated'' (59 C. J. 981), and appellant's position is that the general words ''any other business or occupation charging storage fees or rents'' in said subdivision 2 are limited by the preceding enumeration to businesses or occupations similar to those specifically mentioned, and that the business of charging and collecting rentals on property used for offices and storerooms is not the same or similar to them, and, therefore, does not fall within the provisions of the act. Appellee contends, upon the other hand, that this language is all-inclusive in meaning and, hence, discloses an intention on the part of the legislature to require all those engaged in the business of charging rentals, regardless of the character of the property involved, to pay a sales tax on the gross receipts therefrom. Whether the legislature in using this expression, had in mind the business of charging rents on storerooms and office buildings must be gained from the language itself in the light of its context, and the subject-matter to which it relates, for in no other part of the act is reference made to the question of rentals.

Chapter 77, *supra,* in which the language is found is entitled ''An Act Relating To Excise Taxation, And To Impose A License Fee And A Privilege Tax Upon The Privilege of Engaging In Certain Occupations And Business,'' and its purpose is stated in the body of the act to raise public money to be used. in ''liquidating the outstanding obligations of the state government and to aid in defraying the necessary and ordinary expenses of the state and to reduce or eliminate the annual tax levy on property for state purposes and to reduce the levy on property for public school education.'' An act similar to this was passed by the Eleventh Legislature two years before, chapter 17, Session Laws of 1933, First Special Session, but it applied mainly

to the income of those engaged in the business of selling tangible property, was enacted for two years only and carried a rate of 1½ per cent. on gross retail sales. The additional revenue raised by it, however, aided the state's financial condition materially, but this was still in such shape, as the end of the two year period approached, that the members of the next legislature, the Twelfth, felt it necessary not only to continue the tax but to broaden its base by applying it to businesses not included in the act then in force and about to expire and by increasing the rates that act carried.

For some reason, however, notwithstanding its decision to apply the tax to the gross income or sales of a number of occupations and businesses the act of 1933 did not include, the legislature thought best not to impose it on the gross income of those engaged in all lines of endeavor but only on that of persons following certain occupations and businesses. It divided these into seven classes and required all those in the same class, with one exception, to pay the same rate, but did not apply this rate to all seven classes. One-fourth of 1 per cent. was placed on one class, 1 per cent. on four classes, and 2 per cent. on two, and if the business of charging rentals on offices and storerooms falls in any one of them, it is class (f) which imposes a tax of 2 per cent. on the gross income or sales of persons engaged in the following occupations:

"1. Operating or conducting theatres, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, billiard and pool parlors and bowling alleys, dance, dance halls and any business charging admission fees for exhibition, amusement or instruction other than projects of *bona fide* religious or educational institutions. . . .

"2. Hotels, guest houses, dude ranches and resorts, rooming houses, apartment houses, automobile rental services, automobile storage garages, parking lots, tourist camps or any other business or occupation charging storage fees or rents and adjustment and credit bureaus and collection agencies."

A mere reading of these two groups suggests that in selecting the businesses composing each the legislature had in mind occupations through which runs a common thread or purpose. In the first it meant to include those furnishing chiefly entertainment or amusement for the public, such, for instance, as shows, races, games; and in the second, those supplying accommodations, either wholly or in part, for tourists or transients, such, for instance, as guest houses, dude ranches and resorts, hotels or tourist camps. One reading these two enumerations finds it difficult, if not impossible, to escape the conclusion that only businesses possessing these respective characteristics were intended to be included in these groups.

The nine occupations mentioned in number 2, preceding the general words, "or any other business," do not possess the common factor in the same degree, but this is not material since it is plain that furnishing accommodations for tourists, either living quarters for themselves or storage for their cars, forms a substantial portion of the business of all of them, except one, automobile rental services, which supplies rental cars for residents as well as tourists. Guest houses, dude ranches and resorts, and tourist camps deal almost exclusively with tourists or transients, while hotels, rooming houses, apartment houses, automobile rental services, automobile storage garages and parking lots accommodate this same class of people in large part though not so completely. as the other three. Hence, by using the general language "or any

other business or occupation charging storage fees or rents,'' following the enumeration of these particular businesses, the legislature evidently intended to include only rental businesses of a kind similar to those specifically named, and since by the latter it had in mind only those furnishing living accommodations to tourists or transients, either in whole or in part, it is hardly reasonable to presume that it intended that the business of renting offices and storerooms to permanent residents for business purposes should come within the term ''any other business charging rents.'' The rule of *ejusdem generis* invoked by appellant removes any doubt that may exist as to its intention in this respect, if applicable, and it occurs to us that it is. According to it the legislature, in following the enumeration of the nine particular businesses by the general term, ''or any other business or occupation charging . . . rents,'' intended to limit or restrict the meaning of this general language to businesses or occupations of the same kind, class or character as those specifically mentioned, that is, to those furnishing living accommodations to tourists or transients. The use of the word, ''other'' in this connection, under all the authorities leads to this result, the following statement in 25 R. C. L. 997 being typical:

''In accordance with the rule of *ejusdem generis* such terms as 'other,' 'other thing,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described. . . . So it has been decided that replevin will not lie for crops severed by the person in possession of the land under claim of title, either at common law or under a statute enabling the owner of the land to maintain replevin for timber, lumber, coal or 'other property' severed therefrom. And in construing a statute which gives 'every wife, child, parent, guard-

ian, husband or other person,' a right of action, for injury by reason of the intoxication of any person, against the seller of the liquors, since the persons enumerated are persons who stand to him in special relations, it is therefore to be assumed that 'any other person' who may sue must also stand to him in some special relation so as to be injured by his intoxication or by the sales, etc., to him.''

To accept the construction appellee contends for, however, that the term, ''any other business charging rents,'' is all-inclusive in meaning and applies to every kind or character of business that charges rents, whether similar to those enumerated or not, is to hold in the face of all authority that the word ''other'' is not restrictive in meaning and, hence, that the legislature had no purpose in particularizing the nine businesses preceding it. If that body had entertained this view it is difficult to believe that it would have attempted to carry it into effect in such an uncertain and doubtful manner, when it could have done so easily and naturally by including the renting of property for business purposes as one of those especially enumerated, or by inserting another subdivision applying to it, or in some other appropriate way. The fact that it did not do this points strongly to the conclusion that such was not its intention.

■■ Appellee contends, further, however, that if the language of section 2 (f) must be construed to mean that the businesses it specifically enumerates are within the provisions of the excise revenue act and those engaged in renting property for business purposes are not, the entire subdivision must fall, because to compel the former to pay a tax on the income from their businesses and not require the latter to do so is arbitrary and discriminatory, and, therefore, a denial of the equal protection of the law. It must be kept in mind that a privilege tax is not a tax on

property but a tax on the right to engage in business and that the legislature may impose it on any class or classes of business it cares to and decline to apply it to others, its only limitation in this respect being that the classification it makes must be reasonable, not arbitrary or discriminatory, and such that all those falling within the same class will be treated alike. We are unable to see a violation of this requirement in a statute imposing a tax on the gross income of those engaged in the business of furnishing living accommodations to tourists or transients and not imposing it on the income of those who rent offices and storerooms. The former are activities or businesses of a particular type, and it is plain that their common characteristic, the one that guided the legislature in naming them, is not possessed by the latter.

It is our view, therefore, that the charging of rentals on business property is not an activity within the meaning of the language "or any other business or occupation charging storage fees or rents."

The judgment of the superior court is reversed.

LOCKWOOD, C. J., and ROSS, J., concur.