589 P.2d 24

**MIAMI COPPER COMPANY DIVISION, TENNESSEE CORPORATION, Plaintiff-Appellee,**

v.

**STATE TAX COMMISSION of the State of Arizona, Defendant-Appellant.**

No. 2 CA–CIV 2867.

Court of Appeals of Arizona, Division 2.

Sept. 20, 1978.

*Rehearing Denied Nov. 22, 1978.*

Review Denied Dec. 12, 1978.

Morris & Malott by James R. Malott, Jr., Globe, for plaintiff/appellee.

John A. LaSota, Jr., Atty. Gen., by James D. Winter, Asst. Atty. Gen., Phoenix, for defendant/appellant.

## OPINION

RICHMOND, Chief Judge.

On cross motions for summary judgment, the trial court ruled that appellee Miami Copper Company (taxpayer) was entitled to a refund of transaction privilege and education taxes paid under protest for the years 1964 to 1967. We reverse because we believe the trial court was in error in finding that the proper tax basis was the value of taxpayer's product when it began its journey to the smelter.[1]

Taxpayer mines copper, which is then prepared in part by others for eventual sale out of state by taxpayer. A.R.S. § 42–1309 imposes an education and privilege excise tax on ". . . business activities . . in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income . · . ." The applicable rates are set forth in § 42–1310:

"The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:

\* \* \* \* \* \*

"2. At an amount equal to one percent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"(a) Mining, quarrying, smelting, or producing for sale, profit or commercial use, any oil, natural gas, limestone, sand, gravel, copper, gold, silver or other mineral product, compound or combination of mineral products . . . ."

Because taxpayer's product is not sold in Arizona, its value for assessment of the tax must be established under § 42–1316:

"If any person engaging in any business classified in subdivision (a), paragraph 2 of § 42–1310 ships or transports products, or any part thereof, out of the state without making sale of such products, or ships his products outside of the state in an unfinished condition, the value of the products or articles in the condition or form in which they existed when transported out of the state and before they enter interstate commerce shall be the basis for assessment of the tax imposed by paragraph 2 of § 42–1310, and the department shall prescribe equitable and uniform rules for ascertaining such value."

As the result of an audit, the state tax commission in an amended assessment disallowed taxpayer's deduction for the period from October 1, 1964, to May 31, 1967, of in-state smelting charges from the values subject to the tax. Taxpayer paid the additional assessment under protest and then brought an action in the superior court to recover the disputed amount. The position on which taxpayer prevailed in the trial court is that:

1. Because the "business" of taxpayer is mining and not smelting, the tax should have been based on the value of copper concentrates and precipitates before they went through the smelting process.

2. A proper construction of § 42–1316 permits the deduction of in-state smelting charges.

3. Interstate commerce, as contemplated by § 42–1316, begins when the copper concentrates and precipitates are placed on railroad cars for delivery to the smelters.

4. Inclusion of the value added by smelting denies taxpayer equal protection of the law.

We will deal with taxpayer's various contentions in the order they are set forth above.

A.R.S. § 42–1301 defines "business" as including:

". . . all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales."

---

1. The tax commission conceded in the trial court that taxpayer was entitled to a credit of $577.49 against future taxes and to refund in the amount of $1,463.58; it does not contest those portions of the judgment on this appeal.

Taxpayer's activities related to this appeal are as follows. From its mines in Gila County, it produces concentrates of about 27.5% copper, and precipitates of about 58.5% copper. These materials are then delivered to Inspiration Consolidated Copper Company, f. o. b. Inspiration Transfer, Miami, Arizona, and to Phelps Dodge Corporation, f. o. b. Smelting Works, Douglas, Arizona. By separate agreements with Inspiration and Phelps Dodge, the concentrates and precipitates are smelted for a per-ton service fee, producing "blister copper" of 99.5% purity. The agreements provide that the blister copper will be shipped by Inspiration to a refinery in New Jersey, and by Phelps Dodge to a refinery in El Paso, Texas. Taxpayer designates to whom the refined copper will be delivered after refining. Although it may not divert the shipment until the refining has been completed, ownership of the copper at all times remains in taxpayer.

In construing the intent of the privilege tax, "business" is to be given its ordinary definition. *Arizona State Tax Commission v. First National Bank Building Corp.,* 5 Ariz.App. 594, 429 P.2d 481 (1967). If an activity is intended to benefit an organization, it is properly considered the "business" of the organization. *See* § 42–1301, supra; *O'Neil v. United Producers and Consumers Cooperative,* 57 Ariz. 295, 113 P.2d 645 (1941). *See also, e. g., State Tax Commission v. Ranchers Exploration and Development Corp.,* 22 Ariz.App. 480, 528 P.2d 866 (1975). Taxpayer's business includes, but is not limited to, mining. Its business extends to services required to prepare its mineral products for their intended sale, even if performed by others under contract.

In support of its second contention, taxpayer cites two bases to support its construction of A.R.S. § 42–1316:

1. The commission's long-standing practice of allowing the deduction of in-state smelting charges constitutes an administrative construction of the taxing statute;
2. Including the value added by in-state smelting results in double taxation,

whereas taxpayer's construction of the statute does not; the latter should therefore prevail, under common rules of construction.

We are not persuaded on either score.

An administrative construction of a statute is entitled to considerable weight. *Morris v. Arizona Corporation Commission,* 24 Ariz.App. 454, 539 P.2d 928 (1975). We fail to see, however, how inaction of the tax commission constitutes a construction of the statute, favorable to taxpayer or otherwise. As evidence of an administrative interpretation, on the one hand is the affidavit of the director of the commission's sales tax division, stating that the commission's policy has always been to allow the deduction of only out-of-state finishing costs. On the other hand, it is stipulated that for many years it has been the practice of taxpayer to deduct from its basis the costs of in-state smelting. Mere failure to collect an excise tax due on previously unassessed value, however, does not amount to construction of an unambiguous statute, forever precluding the taxing authority from taxing the additional values. *See John Ownbey Co. v. Butler,* 211 Tenn. 366, 365 S.W.2d 33 (1963).

In support of its position, taxpayer relies on language from *Alvord v. State Tax Commission,* 69 Ariz. 287, 213 P.2d 363 (1950):

"For twelve years the administrative officers enforced this law as now contended for by petitioners. During all this time the Legislature was apparently satisfied with this interpretation, otherwise, it doubtless would have clarified the statute. Administrative interpretation is not controlling, but when allowed to be operated for years the courts do give some weight to such interpretation in construing the law." 69 Ariz. at 292, 213 P.2d at 367.

Although *Alvord* deals with an attempt by the commission to collect an excise tax not theretofore collected, we do not believe its holding applies to the facts before us. *Alvord* involved a construction of a section of the Excise Revenue Act of 1935, as amended, which imposed a tax on certain rental income. Soon after the initial enactment

**154**

of the statute, the question arose whether office rentals were taxable. The supreme court in *White v. Moore,* 46 Ariz. 48, 46 P.2d 1077 (1935), held that transient use was a "common thread" running through the rentals taxed which revealed a legislative intent not to tax office or mercantile rentals. The legislature then amended the statute in 1937 to include office rentals. The dispute in *Alvord* arose when the commission sought to extend the statute further by taxing rentals derived from agricultural land and dwelling houses. The court held that the 1937 amendment to the original act did not refute the "common thread" analysis of *White v. Moore,* supra; instead, the amendment merely responded to it. The court concluded that since the "common thread" analysis still obtained, and since the legislature had added only the enumerated business of renting offices, the attempt to include all businesses collecting rents within the purview of the act violated the legislative intent as clearly established by the history of the legislation and its interpretation by the courts and the administrative officers.

Contrary to the ·situation in *Alvord,* in this case a plain reading of § 42–1316 leads us to conclude that the intent of the legislature was to tax any value attributable to in-state activity. The hiatus in the tax commission's effectuation of that intent does not diminish its existence or clarity.

■ Taxpayer's alternative argument is that because the smelting activity of Inspiration and Phelps Dodge is also subject to a privilege tax, to impose a tax on taxpayer including the value added by the smelting results in double taxation. We do not agree. Double taxation occurs "when the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority . . ." *Milwaukee Motor Transportation Co. v. Commissioner of Taxation,* 292 Minn. 66, 193 N.W.2d 605, 612 (1971). In the case before us, different "persons" are being taxed for different privileges. Inspiration and Phelps Dodge are taxed for the privilege of operating a smelter within the state, while taxpayer is taxed for the privilege of mining and preparing for sale the products it mines. *Cf. Boise Bowling Center v. State,* 93 Idaho 367, 461 P.2d 262 (1969).

■ In addition to its construction arguments, taxpayer also contends that a change in the commission's regulations is an impermissible alteration of the statute as drafted by the legislature. Prior to 1965, regulation 2.2.6 read: "The value [of a mineral product sold out of state] shall be the market price before shipment or the sale price when sold, less the cost of freight and cost of finishing the product when included in the sale price." After 1965, the same regulation read: "The value shall be the market price before shipment or the sale price when sold, less the cost of freight and the cost of finishing the product *when performed outside of Arizona* and included in the sale price. [Emphasis added.]" [2] We believe the change merely clarified the method of ascertaining the product's taxable value, in accordance with § 42–1316, as of its entry into interstate commerce.

■ We next must determine when, as a matter of law, taxpayer's copper entered interstate commerce. Activities which are more closely related to manufacture than transport are essentially local, and may not be considered part of interstate commerce. *See Utah Power & Light Co. v. Pfost,* 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038 (1932). Where it is not intended that a product is to be transported out of state until it has been subjected to a manufacturing process that materially changes its character, utility, and value, the movement of the product to the point of processing is not part of interstate commerce. *Arkadelphia Milling Co. v. St. Louis S.W. Ry.,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919).

■ Taxpayer attempts to distinguish those cases involving products which in

2.  The regulation has since been amended again, effective August 1, 1976. *See* A.C.C.R. R15–5– 905.

varying degrees were not committed prior to processing to eventual movement beyond the taxing state. It is well established, however, that intent to export to another nation or state does not alone determine whether in fact the goods have become exports or have entered interstate commerce. *See Kosydar v. National Cash Register,* 417 U.S. 62, 94 S.Ct. 2108, 40 L.Ed.2d 660 (1974); *Coe v. Errol,* 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886).

The reasoning behind the rule is well stated in *Heisler v. Thomas Colliery Co.,* 260 U.S. 245, 43 S.Ct. 83, 67 L.Ed. 237 (1922). ". . . If the possibility, or *indeed certainty,* of exportation of a product or article from a state, determines it to be in interstate commerce before the commencement of its movement from the state, it would seem to follow that it is in such commerce from the instant of its growth or production, and in the case of coals, as they lie in the ground. The result would be curious. It would nationalize all industries, it would nationalize and withdraw from state jurisdiction and deliver to federal commercial control the fruits of California and the South, the wheat of the West and its meats, the cotton of the South, the shoes of Massachusetts and the woolen industries of other states at the very inception of their production or growth, that is, the fruits unpicked, the cotton and wheat ungathered, hides and flesh of cattle yet 'on the hoof,' wool yet unshorn, and coal yet unmined because they are in varying percentages destined for and surely to be exported to states other than those of their production. [Emphasis added.]" 260 U.S. at 259–60, 43 S.Ct. at 86, 67 L.Ed. at 243.

From the foregoing, we conclude that the taxpayer's mineral products did not enter interstate commerce at any time before completion of the smelting process in Arizona. A taxpayer may not immunize from taxation the value added to his product merely because it was committed to eventual out-of-state consumption or sale before it was subjected to local processing or manufacture. Taxpayer's copper did not enter interstate commerce as that term is contemplated by A.R.S. § 42–1316 until it began its journey to the New Jersey and Texas refineries.

Finally, we do not agree that the foregoing construction of the pertinent statutes results in a denial of equal protection. Taxpayer's argument is that if value added by in-state smelting is subject to the tax, while value added by out-of-state smelting would not be, a taxpayer whose copper is smelted in Arizona is denied equal protection of the law. What a person chooses to do in another state, whatever his reasons, is not relevant to the validity of A.R.S. §§ 42–1309, et seq., which purport to tax only that value which is attributable to activities within this state. The constitutional obligation of Arizona is to treat equally essentially similar activities carried on within its borders.

That portion of the judgment upholding the taxpayer's deduction of in-state smelting charges is vacated and the trial court is directed to enter judgment in favor of the tax commission.

Reversed.

HOWARD and HATHAWAY, JJ., concur.