796 P.2d 924

**ROWE INTERNATIONAL, INC., an Arizona corporation, Plaintiff–Appellee,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellant.**

No. 1 CA–TX 89–002.

Court of Appeals of Arizona, Division 1, Department T.

April 10, 1990.

Reconsideration Denied May 25, 1990.

Review Denied Sept. 25, 1990.

---

Snell & Wilmer by Steven R. Partridge and James P. Muehlberger, Phoenix, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen. by Jack B. Schiffman, and Ian A. MacPherson, Asst. Attys. Gen., Phoenix, for defendant-appellant.

## OPINION

JACOBSON, Presiding Judge.

The Arizona Department of Revenue (Department) appeals from summary judgment entered in favor of the taxpayer, Rowe International, Inc. (Rowe), in Rowe's action for a refund of transaction privilege taxes calculated on its sales of video game machines. Rowe's tax liability in this case depends upon whether its customers are in

the business of operating or conducting games or whether those customers are in the business of leasing or renting machines.

The factual background giving rise to this controversy is rather simple and straightforward. From October 1, 1979 through March 31, 1983, Rowe was in the business of selling video game machines to video arcades and other businesses. In exchange for a quarter, the player of a video game was permitted control over the video game machine. Each machine would display a game that the player could play for as long as his or her quarters and skill permitted. These machines were large and heavy, and could not be moved easily. All of Rowe's sales were final. Rowe retained no right to share in its customers' income from the machines.

## STATUTORY BACKGROUND

During the taxable periods at issue in this appeal, Arizona's transaction privilege taxes were governed by A.R.S. § 42–1301 *et seq.*[1] Rowe's tax liability, if any, for these transaction privilege taxes is as a retail seller of personal property under A.R.S. § 42–1312(A). A "sale at retail" is defined by A.R.S. § 42–1301(20) as "a sale for any purpose *other than for resale* in the form of tangible personal property...." (Emphasis added.)

For the purpose of this litigation, the question whether Rowe's sales of video game machines constituted taxable sales at retail depends on which of two subsections of A.R.S. § 42–1314(A) applied to the income that persons or businesses which bought those machines from Rowe earned by making them available to the public. Section 42–1314(A) provided:

A. The tax imposed by § 42–1309, subsection A shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

---

1. Unless otherwise indicated, all statutory references in this opinion will be to those in existence at the time the sales at issue took place.

1. Operating or conducting theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, *games,* billiard and pool parlors and bowling alleys, public dances, dance halls, boxing and wrestling matches and *any business charging admission fees for exhibition, amusement or instruction,* other than projects of bona fide religious or educational institutions.

2. Leasing or renting tangible personal property for a consideration. *Sales of tangible personal property to be leased or rented* to a person engaged in the business of leasing or renting such tangible personal property for a consideration *shall be deemed to be resale sales....*

(Emphasis added.) In sum, if the income derived by the customers who purchased the video game machines from Rowe is taxable to those customers under § 42-1314(A)(1), then Rowe has made "sales at retail" and is liable for the transaction privilege tax under § 42-1312(A). However, if the income derived by those customers is income from the lease or rental of tangible personal property, then Rowe's initial sales of the video game machines are "resale sales," and thus do not constitute sales at retail.

## PROCEDURAL HISTORY

In November 1984, the Department issued two amended transaction privilege tax assessments to Rowe covering the periods from October 1, 1979 through March 31, 1983. The assessments alleged that Rowe was liable to pay additional transaction privilege taxes totaling approximately $150,000, plus interest and a ten percent penalty. Rowe timely requested an administrative hearing pursuant to A.R.S. § 42-1338.[2] Rowe's hearing request asked that the Department's amended assessments be reduced to zero on a number of grounds, including Rowe's contention that:

> video arcades and other businesses that provide video games ... are engaged in

a taxable rental ... activity. Therefore, sales of video games ... to businesses that rent those machines to their customers are exempt.

After a hearing, the hearing officer issued a proposed decision in Rowe's favor, ruling:

> [T]he public's use of the video machines is properly characterized as a rental thereof and, that being the case, the initial sale of the machines to the arcade operators and other establishments is exempt from the tax because it is a sale for rental.

The Department appealed the hearing officer's proposed decision and in June 1986, the director of the Department reversed, concluding that the public's use of coin-operated video game machines was not a rental, and that the initial sale of these machines was not a sale for resale. The director ruled:

> The initial sale is a sale of tangible personal property which is used and consumed in the arcade operator's business. The use of the machines by the general public is a sale of services.

Rowe in turn appealed this order to the Arizona State Board of Tax Appeals, Division Two, pursuant to A.R.S. § 42-1338.01.[3] After a hearing, the board denied Rowe's appeal, and later denied Rowe's motion for review of its decision.

In June 1987, the Department provided Rowe with a statement in the sum of $273,300.24 as the total amount it owed based on the Department's 1984 amended transaction privilege tax assessments, including penalties and interest through June 30, 1987. Rowe paid $272,325.78 under protest and on June 30, 1987, Rowe filed his action for recovery of that amount pursuant to A.R.S. § 42-124(B)(2). After the parties filed cross-motions for summary judgment, the case was transferred to the tax department of the superior court (tax court) by stipulation of the parties. *See* A.R.S. § 12-161 *et seq.*, added by Laws 1988, Ch. 330, § 2, eff. Sept. 30, 1988.

---

**2.** Repealed by Laws *1985,* Ch. 366, § *1,* eff. July 1, 1986. *See* current § 42-122.

**3.** Repealed by Laws *1985,* Ch. 366, § *1,* eff. July 1, 1986. *See* current A.R.S. § 42-124(A).

The tax court subsequently granted Rowe's motion for summary judgment and denied the Department's motion, and ordered a refund of the amount paid under protest, with interest and attorneys' fees. In doing so, the tax court held:

> A review of the language of ARS 42–1314 A 1 has convinced the Court that the use of the word games therein does not include coin operated video games. In light of the other activities listed in Paragraph A 1, the Court finds a more reasonable interpretation to be that the word, "games," means, contests the revenue from which comes from spectators. "Games" may also include contests between parties in which the revenue is derived from entrance fees.

> The Court holds that the operation of a video game machine, where the machinery responds to the manipulation of the player who had paid for the right to play, and, is controlled by the operator until the time he has paid for expires, is a rental. The revenue from such a business is more appropriately taxed under ARS 42–1314 A 2 than 42–1314 A 1.

The Department appealed from the judgment and the denial of its motion for new trial. We have subject-matter jurisdiction pursuant to A.R.S. §§ 12–2101(B) and 12–170(C).

### DISCUSSION

The Department's contentions are twofold: (1) that the tax court's limitation of "games" under A.R.S. § 42–1314(A)(1) only to contests to which an admission fee is charged is too restrictive, and (2) in any event, video game arcades are not in the business of "leasing or renting." Since this matter can be resolved under the first contention, we do not reach the second.

*Taxability of Video Game Proceeds Under Former A.R.S. § 42–1314(A)(1)*

In interpreting a statute, our primary task is to determine and carry out the intent of the legislature. *Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). Where the language of a statute is unambiguous and would not lead to a mischievous or absurd result, we must observe the obvious and natural import of the language used. *Ernst v. Collins*, 81 Ariz. 178, 182, 302 P.2d 941, 943 (1956). Where construction is required, we must construe statutes "liberally ... to effect their objects and to promote justice." A.R.S. § 1–211(B). In doing so, we consider the language used in the statute, its context, its subject matter, its historical background, the effects and consequences of alternative constructions, and the spirit and purpose of the law. *State v. Superior Court*, 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976); *Grant v. Board of Regents*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982); *Department of Revenue v. Southern Union Gas Co.*, 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978).

For clarity, we repeat the pertinent language of A.R.S. § 42–1314(A)(1) which deals with those businesses operating or conducting:

> ... theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, billiard and pool parlors and bowling alleys, public dances, dance halls, boxing and wrestling matches and any business charging admission fees for exhibition, amusement or instruction, other than projects of bona fide religious or educational institutions.

Following the admonition of A.R.S. § 1–213, the word "games" must be construed "according to the common and approved use of the language." In common usage, the word "games" is not restricted to spectator events for which an admission fee is charged. *Webster's Third New International Dictionary (Unabridged)* 933 (1986) defines "game" as follows:

> 1 a (1): an amusement or pastime: DIVERSION PLAY ... (2): the equipment used to play a game....

Under this common definition, both video games and video game machines would properly qualify as "games." In our opinion, the context of the word "games"

in subsection (A)(1) does not compel a narrower interpretation. Contrary to the tax court's conclusion and Rowe's contention on appeal, an admission fee is not the common denominator of all the activities listed in subsection (A)(1). Billiard and pool parlors and bowling alleys are not generally considered to be spectator activities. Rather, the revenue from their operations is typically from game or time-related user fees as opposed to admission fees. Additionally, the phrase "any business charging admission fees ...," following the list of specific businesses without the use of the word "other," militates strongly against the proposition that the admission fee element was assumed to inhere in every business enumerated in the statute.

Both parties cite legislative history in support of their respective positions. Laws 1935, Ch. 77, art. II, § 2(f)(1) was the predecessor of A.R.S. § 42–1314(A)(1). At the same time, Laws 1935, Ch. 78, art. III, § 1(b) imposed a privilege license tax

> [u]pon each mechanical game or device, excluding pay telephones and pay toilets, permitting the operation thereof by insertion therein of coins, slugs or tokens, or which may be operated by means or with the assistance of springs, weights, levers, plungers, magnets, electricity, gravity, or the skill or the force of the player thereof.

> .    .    .    .    .

This enactment, which was repealed by Laws 1939, Ch. 76, § 7, provided that the per-machine levy was imposed "[i]n addition to all other taxes...." Laws 1935, Ch. 78, art. III, § 1(a). Rowe argues that the simultaneous enactment of these statutes evidences the legislature's intent to distinguish between mechanical games and games for which admission is charged. Conversely, the Department asserts that the two enactments indicate the legislature's intent that the coin-operated mechanical games and devices subject to the per-machine privilege license tax were the same "games" whose operation was sub-

ject to a two percent transaction privilege tax under the predecessor of A.R.S. § 42–1314(A)(1). In our opinion, while both contentions are plausible, it appears that, if this matter were to be resolved solely upon legislative history, the Department's argument is more persuasive.

Rowe also argues that subsection (A)(1) cannot apply to video game machines because they had not been invented when the statute's predecessor was first enacted. However, in our opinion, Rowe's reliance on *Arizona Lotus Corp. v. City of Phoenix,* 136 Ariz. 22, 663 P.2d 1013 (App.1983) as authority for this proposition is misplaced. In *Arizona Lotus,* the taxpayers contended that, because the taxing ordinance was inapplicable by its own terms whenever imposition of the tax would be unconstitutional, it must have incorporated into the ordinance the judicial interpretation of the commerce clause of the United States Constitution. *Id.* at 25, 663 P.2d at 1016. The court characterized this contention as the "so-called 'snapshot' rule," and disagreed with the taxpayers' interpretation of the ordinance. *Id.* at 25–26, 663 P.2d at 1016–17. *Arizona Lotus* does not support the argument that the words used in a statute are frozen in time and cannot be interpreted to apply to anything that was not actually in existence when the statute was enacted. Moreover, there is no indication that the legislature used the general, unqualified word "games" in the predecessor of § 42–1314(A)(1) to apply only to those particular games in existence in 1935.[4] A video "game" is no less a "game" simply for having been recently invented.

Our determination that video game machines are "games" under § 42–1314(A)(1) is also consistent with the Department's administrative interpretation of that section. Since August 1, 1976, the Department's administrative regulations have provided:

R15–5–403.   Amusement machines

---

**4.** In any event, video games are nothing but technologically evolved pinball machines, which originated in their modern form about 1930. 9

*New Encyclopedia Britannica, Micropedia* 447 (15th Ed.1986).

Income from the operation of coin-operated and other machines which provide amusement is taxable under this classification. Examples of such devices include: record players, electronic games, pinball games, and billiard tables.

While we agree with Rowe that we are not required to defer to an administrative agency's erroneous interpretation of statutory law, the Department's construction of former subsection (A)(1) is entitled to considerable weight. *Miami Copper Co. Div., Tenn. Corp. v. State Tax Comm'n*, 121 Ariz. 150, 153, 589 P.2d 24, 27 (App.1978); *Fagner v. Heckler*, 779 F.2d 541, 543 (9th Cir.1985). We believe that the Department's Rule R15–5–403 was a correct interpretation of the scope of subsection (A)(1).

Rowe alternatively contends that § 42–1314(A)(1) is ambiguous, pointing to the disagreement between the tax court and the hearing officer, on the one hand, and the director of the Department and the Board of Tax Appeals, on the other, as to whether subsection (A)(1) applied to video game machines. Because of this alleged ambiguity, Rowe contends subsection (A)(1) *"must"* be construed against the Department, citing *State v. Superior Court*, 113 Ariz. 248, 550 P.2d 626 (1976). We disagree. The rule that "ambiguous" statutes are to be construed against the taxing authority does not override our fundamental mandate to ascertain the intent of the legislature. *See Department of Revenue v. Southern Union Gas Co.*, 119 Ariz. at 514, 582 P.2d at 160. As discussed above, Rowe's narrow interpretation of subsection (A)(1) is at odds with the common meaning of the word "game" and the context within which it appears in the statute.

In 1988, the Arizona legislature comprehensively revised Arizona's transaction privilege taxation statutes. Among other things, the legislature repealed A.R.S. § 42–1314, and added new § 42–1310.14. Laws 1988, Ch. 161, § 4, eff. July 1, 1989. Section 42–1310.14 provided,[5] in pertinent part:

*Amusement classification*

A. The amusement classification is comprised of the business of operating or conducting theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, *games*, billiard or pool parlors, bowling alleys, public dances, dance halls, boxing and wrestling matches, skating rinks, tennis courts, *video games, pinball machines*, sports events or any *other* business charging admission or *user fees* for exhibition, amusement, entertainment or instruction, other than activities or projects of bona fide religious or educational institutions....

....

B. The tax base for the amusement classification is the gross proceeds of sales or gross income derived from the business.

(Emphasis added.)

Rowe contends that, if "video games" and "pinball machines" had been within the original meaning of "games," then the addition of those terms by the legislature in 1988 would have been redundant absent a concomitant deletion of the term "games."

Some courts have presumed that when the legislature changes the language of a statute, they intended to make a change in the existing law. *Brousseau v. Fitzgerald*, 138 Ariz. 453, 455, 675 P.2d 713, 715 (1984). *See also O'Malley Lumber Co. v. Riley*, 126 Ariz. 167, 169, 613 P.2d 629, 631 (App. 1980) (legislative amendment which distinctly changes the operative language indicative of intent to change rather than clarify previous statute). However, some courts have found that a change in statutory language indicated the legislature's intent to clarify rather than change existing law. *See, e.g., Fund Manager v. Tucson Police and Fire*, 147 Ariz. 1, 6, 708 P.2d 92, 97 (App.1985) (an amendment which construes and clarifies a prior statute is a strong indication of the legislature's original intent). In this case, former § 42–1314(A)(1) was not singled out for individual change; rather, it was amended

5. A.R.S. § 42–1310.14 was subsequently renumbered as § 42–1310.13 and amended in a manner not relevant to this appeal by Laws 1989, Ch. 132, §§ 20, 24, eff. May 3, 1989.

as part of a comprehensive revision of Arizona transaction privilege tax laws. Given the breadth of the ordinary meaning of the word "games," and the long administrative construction of § 42–1314(A)(1) as including amusement machines, we conclude that the 1988 revision of that subsection clarified existing law rather than changed it.

■ Contrary to Rowe's contention, our holding that the proceeds from video game machines were taxable under § 42–1314(A)(1) does not constitute double taxation. Double taxation occurs when the same person is taxed twice during the same taxing period for the same purpose. *Miami Copper Co.*, 121 Ariz. at 154, 589 P.2d at 28. Such is not the case here. The income generated from the sales of the video game machines by Rowe was taxable under the retail classification of A.R.S. § 42–1312(A). Such income was in no way related to the income generated from the playing of the games on the machines, which was taxable to the businesses which purchased the machines from Rowe under the amusement classification of § 42–1314(A)(1). These two separate and distinct transactions result in the imposition of privilege taxes upon different "persons" who are taxed under different classifications for different privileges. *See Miami Copper Co., supra.*

■ Further, our holding that the proceeds from video game machines were taxable under former subsection (A)(1) does not violate the equal privileges and immunities provisions of the Arizona and United States Constitutions. Ariz. Const. art. 2, § 13; U.S. Const.Amend. XIV. Rowe's argument to the contrary is specious at best. There simply has been no showing that other similarly situated taxpayers who supply video game machines to arcades and other business establishments are not required to pay the transaction privilege tax. *Cf. Gosnell Development Corp. v. Arizona Dept. of Revenue,* 154 Ariz. 539, 744 P.2d

451 (App.1987) (refund of transaction privilege tax paid by home builder ordered when department failed to collect such taxes from similarly situated and competing home builders).

## CONCLUSION

After this matter was taken under advisement, Rowe filed a "supplemental citation of legal authority." This supplement essentially was not a citation of legal authority, but rather it raised a new legal argument supporting Rowe's contention that the proceeds from the video game machines were taxable under § 42–1314(A)(2), which would allow Rowe to claim the exemption for having sold tangible personal property to be leased or rented pursuant to the second sentence of (A)(2). We will not address arguments raised for the first time under the guise of supplemental authority.[6]

We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.

GERBER and FIDEL, JJ., concur.

---

6. In its reply brief, the Department raises for the first time in this litigation the "casual activities" exception under the definition of "business" in A.R.S. § 42–1301(2) as an independent ground on which to hold that Rowe was not entitled to the exemption from transaction privilege taxes on retail sales under § 42–1314(A)(2). Because we hold that the proceeds from the operation of video game machines were taxable under § 42–1314(A)(1), we need not reach this "casual activities" argument. Thus, we decline to address Rowe's motion to strike this portion of the reply brief as effectively moot. We further decline Rowe's motion to strike other portions of the Department's reply brief as they are irrelevant to our disposition of this appeal.