895 P.2d 108

**WILDERNESS WORLD, INC.,**
a California corporation,
Plaintiff–Appellant,

v.

**DEPARTMENT OF REVENUE, an**
Agency of the STATE OF ARI-
ZONA, Defendant–Appellee.

Nos. CV–94–0122–PR, CV–94–0501–PR.

Supreme Court of Arizona,
En Banc.

April 18, 1995.

As Amended on Denial of Reconsideration
June 9, 1995.

Jennings, Strouss & Salmon by Ann M. Dumenil, J. Matthew Powell, and Brett L. Hopper, Phoenix, for plaintiff-appellant.

Grant Woods, Atty. Gen. by Patrick Irvine, Asst. Atty. Gen., Phoenix, for defendant-appellee.

## OPINION

CORCORAN, Justice.

We accepted jurisdiction of defendant Arizona Department of Revenue's petition for review of the decision of the court of appeals. The Court of Appeals, Division One, held that a transaction privilege or amusement tax was improperly assessed against Wilderness World, Inc. because guided river trips do not fall within the scope of the tax. We affirm the court of appeals' opinion and agree that the tax was improperly imposed.

We reverse the court of appeals' supplemental opinion, which denied attorneys' fees to Wilderness World, and find that Wilderness World is entitled to its attorneys' fees on appeal. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and rule 23, Arizona Rules of Civil Appellate Procedure.

### Facts and Procedural History

Wilderness World is a California corporation that operated an oar-powered river raft-ing service through Grand Canyon National Park. Wilderness World's trips carried passengers down the Colorado River between Lee's Ferry, Arizona and Diamond Creek, Arizona. The typical river trip lasted 12 days and covered several hundred miles. Passengers met the Wilderness World guides and staff in Flagstaff, Arizona for orientation, and then were transported to Lee's Ferry where the trips began.

Professional river guides and employees conducted the river trips and provided first-aid if necessary. A typical river trip was guided by a lead guide, who was required to have a bachelor's degree and several years' experience guiding river trips. In addition, other employees, about one guide per four passengers, were present on the trips.

Wilderness World charged a single fee for a river trip, pursuant to National Park Service (NPS) concessionaire guidelines. The fee included transportation to the river, guide services, food, beverages, lodging, and necessary equipment. NPS regulations prohibit concessionaires from charging an admission fee for entrance to Grand Canyon National Park. River runner concession contracts do not give the company exclusive use or control over access to the Colorado River. The public also has access to the river. According to park service regulations, a trip is commercial rather than private "if any fee, charge or other compensation is collected for conducting, leading, guiding, or outfitting a river trip." 36 C.F.R. § 7.4(b)(3)(iii) (1991).

The Department of Revenue (the Department) audited Wilderness World for the period October 1982 through July 1985 and assessed an additional transaction privilege tax, together with interest and penalties. The tax was levied pursuant to former A.R.S. § 42–1314(A)(1), the current version of which is A.R.S. § 42–1310.13. Wilderness World filed an administrative protest, and the hearing officer abated the penalty, but upheld the assessment of taxes and interest.

Wilderness World appealed to the Board of Tax Appeals, but the board upheld the taxes and interest. Wilderness World paid the taxes and interest, a total of $57,735.08, under protest. Wilderness World then filed a complaint against the Department in the

Arizona Tax Court for a refund of the taxes, and both parties moved for summary judgment. The tax court granted the Department's motion and denied Wilderness World's, and judgment was entered against Wilderness World on October 13, 1992. The tax court found that *DOR v. Moki Mac River Expeditions, Inc.*, 160 Ariz. 369, 773 P.2d 474 (App.1989), was controlling, which case had previously held that this tax was applicable to river trips.

Wilderness World appealed this judgment to the Arizona Court of Appeals, Division One, which reversed the judgment of the tax court. *Wilderness World Inc. v. DOR*, 180 Ariz. 155, 882 P.2d 1281 (App.1993). In its original opinion, the court of appeals awarded Wilderness World its attorneys' fees on appeal pursuant to A.R.S. § 12–348(B). *Wilderness World*, 180 Ariz. at 158, 882 P.2d at 1284. However, in its supplemental opinion, it denied the award of attorneys' fees. *Wilderness World*, 180 Ariz. at 159, 882 P.2d at 1285 (App.1994).

### *Discussion*
### A. Application of the Tax to Wilderness World
#### 1. Standard of Review

■ We review *de novo* the tax court's ruling on the motion for summary judgment. No material issue of fact appears in the record. The tax court's ruling was a conclusion of law, which does not bind the supreme court. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

#### 2. Wilderness World Does Not Charge an Admission Fee

Former A.R.S. § 42–1314(A)(1) [1], the statute at issue, stated:

A. The tax imposed by § 42–1309, subsection A shall be levied and collected at an amount equal to two per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

1. Operating or conducting theaters, movies, operas, shows of any type or nature, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, billiard and pool parlors and bowling alleys, public dances, dance halls, boxing and wrestling matches *and any business charging admission fees for exhibition, amusement or instruction,* other than projects of bona fide religious or educational institutions.

(Emphasis added.) The Department imposed the tax on Wilderness World pursuant to the portion of the statute encompassing "any business charging admission fees for ... amusement," and alleges that river rafting is an amusement that falls within the purview of this statute. Wilderness World argues that under the plain language of the statute, the tax does not apply to it because Wilderness World does not charge an admission fee.

■ When construing a tax statute, words must be given their "plain and ordinary meaning." *Board of Equalization v. Jackson Hole Ski Corp.*, 737 P.2d 350, 354 (Wyo.1987). "Admission" is defined as "[t]he price required or paid for entering; an entrance fee." *The American Heritage Dictionary* at 23 (3d ed. 1992). The NPS prohibits Wilderness World from charging an admission fee to the Grand Canyon National Park, where the river trips take place. We reject the Department's argument that Wilderness World is charging an admission fee to sit in the raft. A river trip encompasses much more than just a raft ride. The fee charged its customers is for the skill, direction, and service provided by the guide, the food and equipment for the trip, and the transportation to and from the river. *See Jackson*

---

1. This statute has been amended several times and renumbered as A.R.S. § 42–1310.13, but is substantively the same as affects this case. A few more activities have been added to the amusement classification, namely skating rinks, tennis courts, video games, pinball machines, and sports events "or any other business charging admission *or user* fees for exhibition, amusement or entertainment," with several exceptions. A.R.S. § 42–1310.13(A) (emphasis added). Admission or user fees "include, but are not limited to, any revenues derived from any form of contractual agreement for rights to or use of premium or special seating facilities or arrangements." A.R.S. § 42–1310.13(A). The legislature has not added river trips to the list.

*Hole,* 737 P.2d at 354–55. Therefore, we conclude that Wilderness World is not charging an admission fee, and, consequently, river trips are not taxable under the plain language of the statute. *See* Op. Arizona Atty. Gen. No. 50–279 (Dec. 20, 1950) (construing meaning of "admission" in amusement tax statute).

## 3. The Tax Does Not Apply Because of the Doctrines of Strict Statutory Construction and *Ejusdem Generis*

■ The statute also does not apply because river rafting trips are not an "amusement" under the statute. Tax statutes are interpreted strictly against the state, and any ambiguities are resolved in favor of the taxpayer. *Ebasco Servs. Inc. v. Tax Comm'n,* 105 Ariz. 94, 97, 459 P.2d 719, 722 (1969) (stating that "words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication"), quoting *Tax Comm'n v. Staggs Realty Corp.,* 85 Ariz. 294, 297, 337 P.2d 281, 283 (1959); *see also RDB Thomas Road Partnership v. City of Phoenix,* 180 Ariz. 194, 196, 883 P.2d 431, 433 (App.1994).

■ River trips could be an "amusement" under this statute if they were of the same kind or nature of activity as those specifically enumerated in the statute. The statute does not specifically list river trips as a taxable activity. Under the doctrine of *ejusdem generis,* "where general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated." *White v. Moore,* 46 Ariz. 48, 53–54, 46 P.2d 1077, 1079 (1935), quoting 59 C.J. *Statutes* § 581 (1932); *see also Alvord v. Tax Comm'n,* 69 Ariz. 287, 291, 213 P.2d 363, 366 (1950). The doctrine of *ejusdem generis* is a device for construing statutes when they are unclear, as in this case. *See Fitzpatrick v. BOMEX,* 96 Ariz. 309, 314, 394 P.2d 423, 427 (1964).

The issue in this case, then, is whether river rafting is of the same kind or nature as the activities specifically listed in the statute: theaters, movies, operas, shows, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, pool parlors, bowling alleys, dances, and boxing and wrestling matches. These activities are mainly spectator events of short duration or participatory activities requiring no supervision. None of these activities resembles a river trip, which can be best characterized as a journey or expedition of extended duration covering hundreds of miles.

The Department argues that the doctrine of *ejusdem generis* does not apply because the statute's general clause ("any business charging admission fees for exhibition, amusement or instruction") does not include the word "other." Both *White* and *Alvord,* which we find controlling, involved a statute with a general clause that reads "or any *other* business or occupation charging storage fees or rents." *Alvord,* 69 Ariz. at 289, 213 P.2d at 365; *White,* 46 Ariz. at 56, 46 P.2d at 1080 (emphasis added). In those cases, the court noted the word "other" merely as additional evidence that the legislature intended the clause to be restrictive rather than all-encompassing in its application. This doctrine applies, regardless of whether the word "other" is included in the general clause. *See, e.g., Davis v. Hidden,* 124 Ariz. 546, 549, 606 P.2d 36, 39 (App.1979).

Finally, the Department argues that *Rowe International, Inc. v. DOR,* 165 Ariz. 122, 796 P.2d 924 (App.1990), precludes the application of *ejusdem generis* to this statute. In *Rowe,* the court of appeals, construing the same statute at issue here, held that the specifically enumerated activity of "games" included video games, even though video games did not involve an admission fee as described in the general clause. 165 Ariz. at 126, 796 P.2d at 928. The Department argues that this means that the general clause cannot be restricted by the specific list of activities preceding it—*i.e., ejusdem generis* does not apply. But *Rowe* does not mention, let alone purport to repudiate, this doctrine. Nor is this interpretation necessary to the analysis of *Rowe,* which found that the activity in question was included in the specifically listed activities.

We conclude that the doctrine of *ejusdem generis* applies and that river rafting trips

like those conducted by Wilderness World are not of the same kind or nature as the specifically listed activities in former A.R.S. § 42–1314(A)(1). Therefore, river rafting is not an "amusement" under this statute. The legislature could have amended the statute to include river trips but has not, which is further evidence that the legislature did not intend to include river trips as a taxable amusement activity under this statute.

### 4. *Moki Mac*

■ The tax court ruled in favor of the Department based on *Moki Mac,* in which the court of appeals construed the statute at issue. In that case, the court held that the statute applied to river trips because river trips were an "amusement," and the cost of the trip was an "admission fee." *Moki Mac,* 160 Ariz. at 373, 773 P.2d at 478.

The focus of *Moki Mac* was a constitutional challenge by Moki Mac to the amusement tax under the commerce and due process clauses. The court concluded that Moki Mac was "engaging in business" in Arizona, and therefore the tax applied to Moki Mac. Before deciding the constitutional issues, the court resolved whether Moki Mac's activities fell within the purview of the statute. *Moki Mac,* 160 Ariz. at 372–74, 773 P.2d at 477–79. The court of appeals' analysis of the constitutional issues in *Moki Mac* is detailed and thoughtful, whereas the discussion regarding the applicability of the statute to river trips cites no authority and offers no analysis. At the court of appeals, Moki Mac did not present the arguments presented in this case based on the principles of strict construction and *ejusdem generis.*

■ The Department argues that *stare decisis* applies and that this court should follow *Moki Mac.* However, the doctrine of *stare decisis* does not apply here because we, as the court of last resort on this issue, are not bound by a court of appeals opinion. *See, e.g., Scappaticci v. Southwest Sav. & Loan Ass'n,* 135 Ariz. 456, 461, 662 P.2d 131, 136 (1983) (noting that, "[a]bsent a decision by the Arizona Supreme Court," a decision by one division of the court of appeals was per-

suasive with the other division). The court of appeals' holding in *Moki Mac* that river rafting trips were an "amusement" that charged an "admission fee" was clearly erroneous, and therefore this court will not follow it.

Wilderness World argues that art. 9, § 3 of the Arizona Constitution, which was not cited to the court in *Moki Mac,* supports its argument that the tax statute should not be applied to it because the statute does not list river rafting as an "object" of the tax. Art. 9, § 3 states, in part: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the tax, to which object only it shall be applied."

However, the word "object" in art. 9, § 3 does not refer to the item being taxed, but instead refers to the objective or purpose of the tax. For example, *Tillotson v. Frohmiller* found a law unconstitutional because it did "not state nor select the object to be promoted or carried out.... [I]t is for the legislature to state what it [the objective or purpose of the tax] shall be, and provide the funds to carry it out. This is necessary, under [art. 9, § 3], in order that the 'object' for which taxes are levied may be known to the taxpayer." 34 Ariz. 394, 404–405, 271 P. 867, 871 (1928). "[T]he failure of the act to specify the purpose for which the tax is levied is fatal." *Id.* at 405, 271 P. at 871, quoting *Meyer v. Lynde–Bowman–Darby Co.,* 35 Okla. 480, 130 P. 548, 549 (1913) [2]; *see also Glendale. Union High Sch. Dist. v. Peoria Sch. Dist.,* 55 Ariz. 151, 158, 99 P.2d 482, 484 (1940) (citing art. 9, § 3, and stating that legislature could not divert funds if "object for which the money was collected still existed"); *Tax Comm'n v. Shattuck,* 44 Ariz. 379, 385–88, 38 P.2d 631, 634–35 (1934) (citing *Tillotson*); *Bone v. Bowen,* 20 Ariz. 592, 598, 185 P. 133, 136 (1919) (citing art. 9, § 3 as authority for statement that "[p]ublic money can only be raised and used for specific purposes, and those purposes must be pointed out by law").

---

**2.** Art. 9 on taxation was taken, at least in part, from the constitution of Oklahoma. *See The Rec-* *ords of the Arizona Constitutional Convention of 1910* 485 (John S. Goff ed., 1991).

Art. 9, § 3 does not apply to this case and neither supports nor detracts from Wilderness World's arguments based on strict construction and *ejusdem generis*.

## B. Retroactivity of This Decision

■ The Department argues that if we find that the tax is applicable to Wilderness World, then our decision should be given prospective effect only, citing *Tax Comm'n v. Ensign*, 75 Ariz. 376, 376–77, 257 P.2d 392, 392 (1953), and *City of Tempe v. Del E. Webb Corp.*, 14 Ariz.App. 228, 229, 482 P.2d 477, 478 (1971). However, those cases are distinguishable because in them the courts found the tax applicable, whereas here we find the tax inapplicable. It is not the common practice, where the court finds a tax has been improperly imposed, to give a decision prospective effect only. *See, e.g., Pittsburgh & Midway Coal Mining Co. v. DOR*, 161 Ariz. 135, 138–39, 776 P.2d 1061, 1064–65 (1989); *Ebasco*, 105 Ariz. at 98–99, 459 P.2d at 723–24; *Dennis Dev. Co. v. DOR*, 122 Ariz. 465, 468–69, 595 P.2d 1010, 1013–14 (App.1979). "An honorable government would not keep taxes to which it is not entitled, and the legislative scheme supports that result." *Pittsburgh & Midway Coal*, 161 Ariz. at 138–39, 776 P.2d at 1064–65 (holding that taxpayer need not have paid its taxes "under protest" to later receive refund when found that taxpayer overpaid).

■ The presumption in civil cases is that opinions will operate retroactively. *Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990). We have set forth a three-part test for determining whether the presumption of retroactivity has been overcome and a decision should be applied prospectively only:

1. Whether the decision establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Whether retroactive application will further or retard operation of the rule, considering the prior history, purpose, and effect of the rule;

3. Whether retroactive application will produce substantially inequitable results.

*Fain Land & Cattle*, 163 Ariz. at 596, 790 P.2d at 251. These are known as the reliance, purpose, and inequity factors. *Id.*

With respect to the first factor, *Moki Mac*, which the court of appeals overruled, was not "clear and reliable precedent" because *Moki Mac* itself did not follow earlier case law. Furthermore, the Department assessed these taxes on Wilderness World before *Moki Mac* was decided. Therefore, the Department cannot argue that it was relying on *Moki Mac* when it assessed the taxes. Regarding the second factor, applying this decision retroactively would only further the purpose of the rule, which is that the amusement tax does not apply to river rafting trips. And finally, regarding the third factor, it would be inequitable not to apply this decision retroactively; otherwise, the state would be keeping taxes to which it was not entitled.

Another reason for giving a decision prospective effect only is that retroactivity may threaten the "financial stability of the taxing body." *Fain Land & Cattle*, 163 Ariz. at 602, 790 P.2d at 257 (Corcoran, J., concurring), quoting *Bade v. Drachman*, 4 Ariz. App. 55, 70, 417 P.2d 689, 704 (1966). Under this alternative "great economic hardship" test, we find that the financial integrity of the state will not be substantially impaired by applying this case retroactively. *See Fain Land & Cattle*, 163 Ariz. at 602, 790 P.2d at 257 (Corcoran, J., concurring).

## C. Attorneys' Fees

■ In the original opinion, the court of appeals granted Wilderness World its attorneys' fees pursuant to A.R.S. § 12–348(B), which states that "a court *may* award fees and other expenses to any party ... which prevails by an adjudication on the merits in an action brought by the party against this state ... challenging the assessment or collection of taxes." (Emphasis added.) In its supplemental opinion, the court of appeals denied the award of attorneys' fees because the Department "had a right to rely on *Moki Mac* in assessing the tax since *Moki Mac* was good law at that time.... [A]t the time the tax was imposed, [the Department]'s assessment was proper." *Wilderness World*, 180 Ariz. at 159, 882 P.2d at 1285.

Wilderness World argues that the court of appeals rewrote the attorneys' fee statute by creating a "substantial justification" defense, although the court of appeals did not explicitly use this term. Before 1990, the statute stated that the court "shall" award attorneys' fees when the taxpayer prevails. However, in 1990, the legislature amended this statute and made the award of attorneys' fees in tax cases discretionary. The legislative history reflects that this amendment was a purposeful decision to limit attorneys' fees awards in some instances. The first version of the amendment contained the language that the court may, "in its discretion," deny or reduce attorneys' fees awards if the "position of this state ... in a tax action is substantially justified." S.B. 1174, as introduced Jan. 31, 1990, Ch. 360, § 1. Later proposed amendments re-inserted "shall award fees" and "may award fees."

Wilderness World cites legislative history to the original attorneys' fees statute, modeled after the federal Equal Access to Justice Act, 28 U.S.C. § 2412, which, as originally enacted, specifically prohibited fee awards if the United States' position was "substantially justified." *See Estate of Walton*, 164 Ariz. 498, 500–01, 794 P.2d ·131, 133–34 (1990); *Cortaro Waters Users' Ass'n v. Steiner*, 148 Ariz. 314, 319, 714 P.2d 807, 812 (1986) (noting that the federal "substantial justification" defense provision has since been repealed). Wilderness World argues that the Arizona legislature's omission of a substantial justification defense or good faith exception to the award of attorneys' fees is significant and indicates that the legislature did not intend to limit the award of attorneys' fees if those defenses exist. *See Arizona Tax Research Ass'n v. DOR*, 163 Ariz. 255, 259, 787 P.2d 1051, 1055 (1989); *Cortaro Waters Users' Ass'n*, 148 Ariz. at 319, 714 P.2d at 812. "In enacting A.R.S. § 12–348, the legislature expressed its intent to reduce the economic deterrents individuals faced in contesting governmental actions, magnified by the disparity between the resources and expertise of the government and individuals." *Arizona Tax Research*, 163 Ariz. at 258, 787 P.2d at 1054; *see also Estate of Walton*, 164 Ariz. at 501, 794 P.2d at 134.

These policy concerns are still applicable, but clearly the legislature, by amending this statute, has indicated an intent to limit attorneys' fees in some cases. Less clear are the reasons for limiting fees because the legislature merely inserted the word "may" and did not adopt the "substantial justification" language. Compelling policy reasons support the conclusion that fees should generally be awarded in these cases; otherwise, taxpayers would be deterred from challenging illegal governmental actions.

Wilderness World argues that the Department could not have reasonably relied on ·*Moki Mac* when it assessed the taxes against it because *Moki Mac* had not yet been decided. However, *Moki Mac* had been decided by the time Wilderness World appealed this assessment to the Board of Tax Appeals, which upheld the assessment of taxes on January 28, 1992. Therefore, the Department was not taking an unreasonable legal position at the state tax court and court of appeals. Nevertheless, we hold that the court of appeals abused its discretion by denying attorneys' fees because the taxpayer should not be deterred from making a good faith challenge to the government's wrongful imposition of taxes. Wilderness World should not be penalized for winning. Wilderness World is entitled to an award of its attorneys' fees on appeal and its fees incurred in establishing its entitlement to fees. *See Lincoln Fosseat Assocs. v. DOR*, 167 Ariz. 36, 38, 804 P.2d 765, 767 (App.1990).

We reinstate the order that Wilderness World recover fees under the initial court of appeals' opinion. Rather than remand to the court of appeals to determine the amount, in the interests of judicial economy, we will determine the fee award here. *See Kadish v. Land Dep't*, 177 Ariz. 322, 331, 868 P.2d 335, 344 (App.1993) (not remanding to the trial court for determination of amount of fee award). Wilderness World will stand on its Application for Attorneys' Fees previously filed in the court of appeals. However, Wilderness World should file a supplemental application for fees with this court pursuant to rule 21, Arizona Rules of Civil Appellate Procedure, only for its fees incurred on its petition for review to this court. The De-

partment may stand on its objections previously filed in the court of appeals, or supplement them along with any objections to the supplemental application for fees relating to the petition for review.

### Conclusion

We affirm the court of appeals' decision that former A.R.S. § 42–1314(A)(1) does not apply to river rafting trips like those conducted by Wilderness World. We disapprove of *Moki Mac* insofar as it found that river rafting trips were an "amusement" that charged an "admission fee." *See Moki Mac,* 160 Ariz. at 373, 773 P.2d at 478. We reverse the court of appeals' denial of attorneys' fees and find that Wilderness World is entitled to an award of its attorneys' fees incurred on appeal, including fees incurred in its petition for review to this court to establish its right to attorneys' fees.

FELDMAN, C.J., MOELLER, V.C.J., and ZLAKET and MARTONE, JJ., concur.