NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ZIEGFIELD INC., d/b/a LE' GIRLS CABARET, *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee*.

No. 1 CA-TX 16-0001
FILED 10-6-2016

---

Appeal from the Arizona Tax Court
No.  TX2014-000136
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of James H. Hays PLC, Tempe
By James H. Hays
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding
Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R**, Judge:

¶1        Ziegfield, Inc. ("Ziegfield") appeals the tax court's grant of summary judgment in favor of the Arizona Department of Revenue (the "Department").  For the following reasons, we conclude that Ziegfield is liable for the transaction privilege tax under the amusement classification.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Ziegfield operated Le' Girls Cabaret (the "Club"), an adult club offering non-alcoholic beverages and live nude performances licensed under Phoenix City Code § 10-131(2) (2016).  After Ziegfield filed amended tax returns requesting a refund of transaction privilege taxes, the Department commenced an audit for the period from February 1, 2008 through August 31, 2011.  The audit resulted in the issuance of a deficiency of $10,130.43 assessed under the amusement classification of the transaction privilege tax.  *See* Ariz. Rev. Stat. ("A.R.S.") § 42-5073 (2013).[1]  Ziegfield protested the assessment through the administrative process and lost.

¶3        After exhausting its administrative remedies, Ziegfield filed a complaint in tax court.  The parties filed cross-motions for summary judgment.  The tax court granted the Department's motion and denied Ziegfield's motion, concluding that the Club's performances constituted "shows" and the income Ziegfield realized was subject to the amusement tax.

¶4        Ziegfield timely appealed from the tax court's judgment, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -170(C) (2016).

## LEGAL DISCUSSION

¶5        This Court reviews *de novo* the tax court's ruling on the parties' cross-motions for summary judgment.  *See Wilderness World, Inc. v. Dep't of Revenue State of Ariz.*, 182 Ariz. 196, 198 (1995) (as amended).  This case involves an issue of statutory interpretation, which we also review *de novo*.  *See Southwest Airlines Co. v. Ariz. Dep't of Revenue*, 217 Ariz. 451, 452, ¶ 6 (App. 2008).  In reviewing tax statutes, we interpret them "strictly

---

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

against the state, and any ambiguities are resolved in favor of the taxpayer." *Wilderness World*, 182 Ariz. at 199.

**¶6** Arizona law imposes a transaction privilege tax upon the privilege of engaging in business within the state. *See Home Depot USA, Inc. v. Ariz. Dep't of Revenue*, 230 Ariz. 498, 500, ¶ 8 (App. 2012). The taxable event is the act of engaging in business, and the tax is levied against "the amount or volume of business transacted." A.R.S. § 42-5008(A) (Supp. 2016); *Ariz. State Tax Comm'n v. Sw. Kenworth, Inc.*, 114 Ariz. 433, 436 (App. 1977). At issue in this case is whether Ziegfield's operation of an adult cabaret rendered it liable for a transaction privilege tax under the amusement classification. *See* A.R.S. § 42-5073.[2]

I.      The Club's Performances Were "Shows"

**¶7** We first address whether Ziegfield's business fell within the scope of the amusement classification. When interpreting tax statutes, we "begin with the words of the operative statute." *Ariz. State Tax Comm'n v. Staggs Realty Corp.*, 85 Ariz. 294, 297 (1959). The plain language of the statute provides us with the best evidence of legislative intent. *See Chevron U.S.A. Inc. v. Ariz. Dep't of Revenue*, 238 Ariz. 519, 521, ¶ 9 (App. 2015) (analyzing an exemption from the transaction privilege tax). "If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994); *see also Bustos v. W.M. Grace Dev.*, 192 Ariz. 396, 398 (App. 1997) ("If statutory language is clear and unambiguous, it is normally conclusive unless clear legislative intent to the contrary exists or impossible or absurd consequences would result.").

**¶8** Pursuant to A.R.S. § 42-5073, the amusement classification is comprised of "the business of operating or conducting theaters, movies, operas, **shows of any type or nature**" and other specified activities. A.R.S. § 42-5073(A) (emphasis added). The Department argues, and the tax court found, that the Club was in the business of conducting "shows." Conversely, Ziegfield argues the Club's performances are not "shows" within the meaning of § 42-5073.

**¶9** In construing tax statutes, we give words their "plain and ordinary meaning." *Wilderness World,* 182 Ariz. at 198 (citation omitted); *see*

---

[2]      Portions of Ziegfield's income were taxed under the restaurant and retail classifications, which it does not challenge.

*also* A.R.S. § 1-213 (2016) ("Words and phrases shall be construed according to the common and approved use of the language."). To determine the plain and ordinary meaning of the word "show," we refer to "established and widely used dictionaries." *W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, 587, ¶ 17 (App. 2004) (citation omitted).

¶10 The online version of the Merriam-Webster dictionary offers three meanings for "show" as might be relevant in the immediate case: (1) "a performance in a theater that usually includes singing and dancing," (2) "**a public performance that is intended to entertain people**," (3) "a television or radio program." (Emphasis added.) Merriam-Webster Dictionary, www.merriam-webster.com/dictionary/show.[3] We apply the second meaning here.

¶11 The Club was licensed as an "adult cabaret," a term which is defined by Arizona law to include clubs that feature "live performances." *See* A.R.S. § 13-1422(G)(3) (Supp. 2016); *see also* Phoenix City Code § 10-131(2) (defining an adult cabaret as a commercial establishment featuring live performances or activities involving the exposure of specified anatomical areas). In tax court, Ziegfield described its cabaret business as follows:

> The club had three stages, one large one and two smaller ones. During a stage performance, the entertainer would typically slowly remove her costume while engaging in some form of dancing or slow movements of a sexually suggestive nature.

Ziegfield referred to its dancers as "performers" or "entertainers" and to their dances as "stage performances."

¶12 Applying the plain meaning of the word show— "a public performance that is intended to entertain people"—we conclude that Ziegfield was in the business of conducting shows; therefore, its business fell within the scope of the amusement tax.[4]

---

3     *See also* 2, The Compact Edition of the Oxford English Dictionary at 2803 (def. of "show" II(2)(c)) (1971) ("To present oneself to a person or persons in order to be looked at.").

4     Ziegfield argues the phrase "shows of any type or nature" follows the words "theaters, movies, operas," all of which "describe shows with a common thread." It urges us to apply the doctrine of ejusdem generis, "where general words follow the enumeration of particular classes

II.     All the Fees Were Taxable

¶13        Having determined that Ziegield's business fell within the scope of the amusement tax, we must determine whether certain fees collected by the Club derived from the business of conducting shows.  On appeal, Ziegfield argues that certain fees it collected from performers were license fees for the lease of physical space and that the licensing revenues were not taxable as amusement receipts.

¶14        Pursuant to § 42-5073, the amusement tax applies to "the gross proceeds of sales or gross income derived from **the business**."  A.R.S. § 42-5073(B) (emphasis added).  The statutes define "business" broadly to include "all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, **either directly or indirectly**."[5]  A.R.S. § 42-5001(A)(1) (Supp. 2016) (emphasis added).    The  transaction  privilege  statutes  establish  the  following presumption:

> [I]t is presumed that all gross proceeds of sales and gross income derived by a person from business activity classified under a taxable business classification comprise the tax base for the business until the contrary is established.

A.R.S. § 42-5023 (2013).

¶15        At issue here are four fees the Club collected from the performers.  The Club collected a "house fee" and a "manager fee" at the end of each night.  These two fees were not tied to a particular performance

---

of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or class of those enumerated."  *Wilderness World,* 182 Ariz. at 199 (citations omitted).  As our supreme court has explained, the rule of ejusdem generis is "only one of many [rules of statutory construction] which are resorted to, if necessary, to attempt to expose some unknown legislative intent."  *Alvord v. State Tax Comm'n*, 69 Ariz. 287, 291 (1950).  If the statutory language is clear, we apply it "without resorting to other methods of statutory interpretation."  *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003) (citation omitted).  We need not apply the rule of ejusdem generis here as the language of § 42-5073 is clear.

[5]     Gross income means "the gross receipts of a taxpayer derived from trade, business, commerce or sales."  A.R.S. § 42-5001(A)(4).

and were adjusted downward if the performer had a slow night.[6]  The Club also collected a "couch fee" for each one-on-one dance and a "VIP fee" for "more private" performances of "greater duration."  The customer paid the couch fee to the performer, who in turn paid a portion to the Club.  The customer paid the VIP fee directly to the Club.

**¶16**　　　Ziegfield's amusement tax liability extended to all gross income derived either directly or indirectly from the business of conducting "shows of any type or nature."  A.R.S. §§ 42-5001(A)(1), -5073.  Our review of the record confirms that the door fees,[7] the house fees, the manager fees, the couch fees, and the VIP fees all constituted income derived from the Club's nude dancing shows whether received directly from the customers or indirectly through the performers.  Accordingly, the income generated from these fees was taxable under A.R.S. § 42-5073.

## CONCLUSION

**¶17**　　　For the foregoing reasons, we affirm the tax court's grant of summary judgment in favor of the Department.  The Department is entitled to its costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:　AA

---

[6]　　　The fact that these fees varied in relation to how much money the performer made in a given night suggests the arrangement constituted fee splitting rather than the lease or rental of real property.  Although Ziegfield creatively called these arrangements a lease or license it does not make it so.  "What's in a name?  That which we call a rose/By any other name would smell as sweet."  William Shakespeare, *Romeo and Juliet* act 2, sc. 2.

[7]　　　The Club charged a cover charge or door fee for entrance to the Club.