IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

DOVE MOUNTAIN HOTELCO, LLC, ET AL.,
*Plaintiffs/Appellants,*

*v.*

ARIZONA DEPARTMENT OF REVENUE,
*Defendant/Appellee.*

No. CV-23-0176-PR
Filed June 7, 2024

Appeal from the Arizona Tax Court
The Honorable M. Scott McCoy, Judge
No. TX2019-000448
**AFFIRMED**

Opinion of the Court of Appeals, Division One
255 Ariz. 324 (App. 2023)
**VACATED**

COUNSEL:

David P. Dorner (argued), Reed Smith LLP, Chicago; and Barbara J. Dawson, Edward J. Hermes, Snell & Wilmer L.L.P., Phoenix, Attorneys for Dove Mountain Hotelco, LLC and HSL Cottonwood RC Hotel, LLC

Kristin K. Mayes, Arizona Attorney General, Scot G. Teasdale (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Revenue

JUSTICE MONTGOMERY authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, KING, and PELANDER (Ret.) joined.[*]

_____

JUSTICE MONTGOMERY, Opinion of the Court:

**¶1** We must determine whether monies paid to reimburse a hotel for the cost of a loyalty program member's complimentary stay constitute gross income for purposes of Arizona's transaction privilege tax ("TPT"). In making this determination, we consider the degree to which *State Tax Commission v. Consumers Market, Inc.*, 87 Ariz. 376 (1960), applies to our analysis. We hold that, pursuant to Arizona's TPT statutes, reimbursements paid to a hotel for a loyalty program member's complimentary stay are gross income, and *Consumers Market* is not applicable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**¶2** We begin with an overview of the program in question and the applicable TPT statutes.

### A. Marriott Rewards Program

**¶3** The Ritz-Carlton Dove Mountain Hotel and Spa ("Dove Mountain")[1] participates in the Marriott Rewards Program (the "Rewards Program") pursuant to the Amended and Restated Rewards Program Participation Agreement effective September 1, 2010 (the "Participation Agreement"). The Rewards Program "serves as a marketing and promotional tool designed to increase customer loyalty and patronage of hotels branded by or otherwise affiliated with" Marriott International, Inc. ("Marriott"). The marketing and loyalty program is operated and administered by Marriott Rewards, LLC ("Marriott Rewards"). As required by the Participation Agreement, Dove Mountain and other

_____

[*] Chief Justice Robert M. Brutinel is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

[1] Dove Mountain Hotelco, LLC operated the hotel for the time in question and sold it to HSL Cottonwood RC Hotel, LLC in June 2016.

lodging participants fund the Rewards Program's marketing efforts by paying a percentage of room revenues, and also providing rooms for complimentary stays to Rewards Program Members ("Members"). Airline, credit card, rental car, and travel companies (collectively "Affiliate Partners") may also participate.

¶4 Members can earn and accumulate "Marriott Points" ("Points") in four ways: (1) through stays at participating hotels; (2) by spending money with Affiliate Partners; (3) by directly purchasing Points from Marriott; or (4) from receiving Points as a gift. In the case of a stay at a hotel like Dove Mountain, a Member earns Points based on the amount of qualifying expenses on the hotel bill. Following a Member's stay in which points are earned, not redeemed, Dove Mountain then remits a percentage of the bill ("Remittance") to purchase Points from Marriott Rewards on the Member's behalf. For the tax period in question, a Remittance, as calculated by Marriott Rewards, was 4.5% of room revenue, or 2.25% if it was a stay in which the Member first enrolled in the Rewards Program. Marriott Rewards then credits the Member's Rewards account with the purchased Points and holds the funds for the benefit of the Rewards Program.

¶5 Members may subsequently redeem accumulated Points for an award certificate. In turn, the certificate can be exchanged for various rewards, such as a complimentary stay at Dove Mountain or another participating hotel, merchandise, airline miles, car rentals, or gift cards. Should a Member exchange an award certificate for a complimentary stay at Dove Mountain, Marriott Rewards subsequently issues a reimbursement payment ("Reimbursement"). The amount of a Reimbursement is calculated pursuant to a formula that factors in the hotel's room occupancy rate—whether above or below 89%—and applies a standard cost amount that reflects "the direct and incremental costs of having a [Member] occupy a room when redeeming [an awards] certificate." The Reimbursement amount does not always cover the full cost of the Member's stay. Because Members can earn Points separate from a stay at a participating hotel and then redeem Points at any participating hotel or for other rewards, in any given month a hotel may pay more in Remittances than it receives in Reimbursements, or vice versa.

## B. Applicable Arizona TPT Statutes

¶6         Arizona's TPT statutes are set forth in A.R.S. title 42, chapter 5, and TPT is specifically defined in A.R.S. § 42-5008:

> A. There is levied and there shall be collected by the department, for the purpose of raising public money, privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income . . . .
>
>  . . . .
>
> C. The tax levied by and collected pursuant to this article and article 2 of this chapter is designated the "transaction privilege tax."

The TPT therefore serves as "an excise tax on the privilege or right to engage in an occupation or business." *State ex rel. Ariz. Dep't of Revenue v. Tunkey*, 254 Ariz. 432, 433 ¶ 2 (2023) (quoting *Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 142 ¶ 6 (2008)).

¶7         The TPT rate applicable to a business is determined by its classification.  A.R.S. § 42-5010(A).  As a hotel, Dove Mountain carries the "transient lodging classification," § 42-5010(A)(2)(a), which "is comprised of the business of operating, for occupancy by transients, a hotel," A.R.S. § 42-5070(A).  A "transient" is further defined as "any person who either at the person's own expense or at the expense of another obtains lodging space or the use of lodging space for less than thirty consecutive days." § 42-5070(F).

¶8         "[T]he gross proceeds of sales or gross income derived from the business," with certain exceptions not applicable here, comprises the tax base for this classification.  § 42-5070(C).  And "it is presumed that all gross proceeds of sales and gross income derived . . . from [transient lodging] business activity . . . comprise[s] the tax base for the business until the contrary is established."  A.R.S. § 42-5023.  Gross income is defined by A.R.S. § 42-5001(4) as the "gross receipts of a taxpayer derived from trade,

business, commerce or sales . . . without any deduction on account of losses." Gross receipts are "the total amount of the sale, lease or rental price . . . valued in money . . . including all receipts, cash, credits and property of every kind or nature." § 42-5001(7). TPT is thus properly understood as "a tax on a business's gross receipts" and not a "sales tax." *Tunkey*, 254 Ariz. at 433 ¶ 2. Furthermore, "[a]lthough liability for the TPT falls on the business, it may charge customers a separately itemized amount to cover the tax." *Id.* Lastly, a sale is "any transfer of title or possession, or both, exchange, barter, lease or rental . . . of tangible personal property *or other activities taxable under this chapter, for a consideration*." § 42-5001(18) (emphasis added).

## C. Dove Mountain TPT Refund

**¶9**         On May 19, 2016, Dove Mountain requested a refund of $162,148.61 from the Arizona Department of Revenue ("ADOR") for TPT paid on certain Reimbursements between 2012 and 2016. Dove Mountain based its request, in part, on the argument that TPT was not due on the amount in question because Members did not pay any money when redeeming Points, the purchase of the complimentary stay was part of the original hotel price, and Reimbursements were not consideration for complimentary stays. Moreover, Dove Mountain noted that gross receipts from prior stays in which Members earned Points were subject to TPT. Notably, Dove Mountain did not seek a refund for TPT levied on Reimbursements in excess of Remittances paid in the same tax period. ADOR denied Dove Mountain's refund request.

**¶10**        Dove Mountain appealed ADOR's decision to the tax court, arguing that the Reimbursements in question were part of a rewards program not subject to TPT pursuant to this Court's holding in *Consumers Market*. The court acknowledged that although there were some similarities between *Consumers Market* and this case, the respective customer loyalty programs were different. In particular, the court distinguished the two programs based on the different ways in which customers could earn and then redeem rewards. The court also found that the record did not support a conclusion that Dove Mountain was necessarily responsible for paying TPT on initial Points-earning transactions, "as opposed to some other entity." Following review of the parties' motions for summary judgment on a largely stipulated record, the court concluded that Dove Mountain was not eligible for a refund and entered judgment for ADOR.

¶11    In the court of appeals, Dove Mountain again argued that, pursuant to *Consumers Market*, Reimbursements from Marriott Rewards should not be subject to TPT because "the underlying free stays were mere 'redemptions of reward points from prior transactions on which tax was previously paid.'" *Dove Mountain Hotelco, LLC v. Ariz. Dep't of Revenue*, 255 Ariz. 324, 326 ¶ 7 (App. 2023). Thus, according to Dove Mountain, the Reimbursements were not subject to TPT and any tax so levied constituted double taxation as stated in *Consumers Market*. *Id.*

¶12    The court of appeals found that, because the Reimbursements from the Rewards Program covered the cost of lodging provided for Members, "Dove Mountain derived the monies from a transient lodging business transaction." *Id.* at 327 ¶ 14. Accordingly, the court held in a split decision that the Reimbursements fell within the statutory definitions of gross receipts and gross income and were subject to TPT. *Id.* The dissent reasoned that the monies paid to Dove Mountain by Marriott Rewards were "a disbursement of post-tax reserves" administered by Marriott Rewards and did not constitute gross income subject to TPT. *Id.* at 329 ¶ 24 (Furuya, J., dissenting).

¶13    We granted review to determine whether the Reimbursements paid by Marriott Rewards to Dove Mountain constitute gross income for TPT purposes and whether *Consumers Market* is controlling precedent. What constitutes gross income for levying TPT on lodging businesses and the law applicable to making this determination are questions of statewide importance.[2] We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

¶14    We review de novo the tax court's ruling on a motion for summary judgment, *Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182 Ariz. 196, 198 (1995), as well as the court's construction and interpretation of Arizona tax statutes, *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477,

---

[2] We also granted review as to whether the court of appeals properly characterized the nature of a Remittance payment made by Dove Mountain to Marriott Rewards as a payment for membership to a third-party vendor. However, our resolution of the other issues renders the characterization of Remittance payments moot.

480 ¶ 8 (2018). We begin by reviewing *Consumers Market*, given Dove Mountain's assertion that it controls the outcome of this case.

**A. *Consumers Market***

**¶15** Dove Mountain argues that the loyalty program in *Consumers Market* is "materially indistinguishable" from the Rewards Program. Therefore, it argues, we should adhere to our construction of TPT statutes in *Consumers Market* and apply its reasoning and holding to preclude ADOR from levying additional TPT on Reimbursements. In contrast, ADOR argues that Reimbursements are readily distinguishable from the loyalty program transactions in *Consumers Market*.

**¶16** The facts relevant to this Court's determination in *Consumers Market* were either stipulated or otherwise uncontroverted. 87 Ariz. at 378–80. The taxpayer operated several supermarkets and, as part of its retail sales business, offered customers trading stamps that could later be exchanged for merchandise from the taxpayer. *Id.* at 377–78. The parties stipulated "that all of the merchandise exchanged by [the taxpayer] . . . for their stamp plan was purchased by [the taxpayer] from its suppliers in the ordinary course of business and for resale." *Id.* at 378. The taxpayer asserted—without contradiction—that "the value of the items of merchandise which were 'exchanged' for accumulated trading stamps was added to the charge made for items sold in the regular course of business." *Id.* at 377–78. Therefore, the value was also included in the taxpayer's total gross sales such "that all tax due on such gross sales had been fully paid." *Id.* Based on these facts, the taxpayer argued that no more tax was due. *Id.* at 378.

**¶17** Although the State Tax Commission ("Commission") admitted there were no genuine issues regarding any material fact, the Commission nevertheless argued that the redemption of trading stamps for merchandise was a retail sale subject to TPT because the stamps represented consideration for the merchandise provided by the taxpayer. *Id.* Consequently, the Commission asserted that the taxpayer owed taxes on the value of the merchandise sales in question. *Id.* at 377.

**¶18** In taking a "practical and realistic approach in determining what the legislature intended" regarding taxation of what this Court called the "redemption plan," *id.* at 379–80, we stated:

[T]he cost to [the taxpayer] in 'retailing' these items of merchandise was reflected in higher prices which its customers were in turn required to pay for foodstuffs purchased from the shelves of [the taxpayer]'s supermarkets. Hence [the taxpayer]'s gross proceeds from its retail sales, the basis upon which the transaction privilege tax is assessed, reflected the cost of retailing this merchandise. Thus, the 'consideration' referred to in the [definition of a sale] has already been paid by [the taxpayer]'s customers.

*Id.* at 379. Given this assessment, the Court characterized the redemption plan as "nothing more and nothing less than a system of advanced spending and deferred enjoyment of the fruits thereof by the [the taxpayer]'s customers." *Id.* In turn, the Court concluded that the exchange of trading stamps for merchandise was just one part of a "whole transaction." *Id.* at 380.

**¶19** Because the monies used to purchase the merchandise for redemption could be directly traced to the gross receipts from the sales in which the stamps were issued, this Court concluded that the stamps did not represent additional consideration. *Id.* Consequently, the Court determined that the legislature could not have intended to tax the value of the merchandise sales because "the imposition of a tax on the [redemption plan] would amount to double taxation." *Id.*

**¶20** Overall, the facts and circumstances in *Consumers Market* render its reasoning and holding inapplicable to the matter before us. Customers in *Consumers Market* could only receive trading stamps in a transaction with the taxpayer. Stamps could later only be redeemed for merchandise sold by the taxpayer. Consequently, the taxpayer could demonstrate, and this Court could conclude, that issuing stamps and later redeeming them for merchandise constituted a "whole transaction." *See id.* at 379–80. Thus, there was only one sale contributing to gross receipts for which TPT could be levied.

**¶21** In contrast, the Rewards Program permits Members to earn Points from participating hotels other than Dove Mountain and from Affiliate Partners engaged in completely different business activities. Members can even purchase Points directly from Marriott Rewards. Thus, Points later redeemed for a complimentary stay can stem from a

Points-earning transaction that had nothing to do with Dove Mountain. Likewise, Points earned from a stay at Dove Mountain can be redeemed for complimentary stays at other hotels, for merchandise, or for other activities with Affiliate Partners unrelated to lodging. In sum, any complimentary room stay provided by Dove Mountain as required by the Participation Agreement has no fixed connection to any particular Points-earning transaction with Dove Mountain.

¶22 The nature and operation of the Rewards Program therefore undermines Dove Mountain's effort to characterize its Points-earning transactions, subsequent redemptions, and Reimbursements as analogous to the "whole transaction" at issue in *Consumers Market*. *See id.* at 380. Thus, this Court's observation that *Consumers Market* customers were engaged in "a system of advanced spending and deferred enjoyment of the fruits thereof by the [taxpayer's] customers" is inapposite to the Rewards Program here. *See id.* at 379. It is far from certain that any Points-earning transaction at Dove Mountain will necessarily result in a future complimentary stay at Dove Mountain.

¶23 Additionally, in *Consumers Market* this Court underscored the uncontroverted fact that the taxpayer added the specific value of merchandise exchanged in redemption transactions to what it charged customers for goods sold in the regular course of business. *Id.* at 378. Thus, the record in *Consumers Market* clearly demonstrated that the particular cost of merchandise purchased with stamps was included in the cost of goods sold in the stamp-issuing transaction. *See id.* In contrast, Dove Mountain is unable to specify the amount added to the price of a room for a Member's Points-earning stay to cover the cost of a future complimentary stay.

¶24 Likewise, Dove Mountain is unable to distinguish in Remittances paid to Marriott between monies used to purchase Points for a Member from monies used to cover the cost to market and administer the Rewards Program. In fact, neither Dove Mountain nor Marriott Rewards has records correlating the Points redeemed for a Member's complimentary stay with any of the Points purchased by Dove Mountain for that Member.

¶25 Ultimately, the nature of the *Consumers Market* transactions for earning and redeeming stamps and the direct correlation between gross receipts and funds used to purchase merchandise for redemption materially distinguish the case from the matter before us. We therefore

decline to rely on *Consumers Market*'s reasoning or holding. *See Beck v. Neville*, 256 Ariz. 361, 373 ¶ 45 (2024) (declining to apply holding of a prior case where facts were distinguishable from matter under consideration); *see also Spring v. Bradford*, 243 Ariz. 167, 171 ¶ 19 (2017) (declining to revisit holding of a prior case "because we find that case materially distinguishable").

**B. Reimbursements and Gross Income**

**¶26**        As stated by Dove Mountain, "[t]he specific issue in this case is whether certain [Reimbursements] are gross income within the scope of Arizona's transaction privilege tax transient lodging classification."  Dove Mountain argues that the Reimbursements from Marriott Rewards are not payments for complimentary stays and are, therefore, not consideration. Accordingly, Dove Mountain asserts that a rewards redemption transaction is not a sale subject to the TPT.  Instead, Dove Mountain characterizes the Reimbursements as "post-tax" savings held by Marriott Rewards, like funds held on deposit with a bank until Dove Mountain's capital is returned to it.   Therefore, Dove Mountain argues that it is not being paid for providing free lodging to Members, "but is simply receiving reimbursements from [Marriott] Rewards for participation in the Rewards Program."

**¶27**        ADOR asserts that once Dove Mountain pays Remittances to Marriott Rewards, it is no longer the hotel's money.  Thus, when Marriott Rewards sends the Reimbursement payment to Dove Mountain, it is a separate transaction generating gross income that is identifiable additional consideration, meeting the statutory definition of gross income subject to TPT.  *See* §§ 42-5001(4), -5008.

**¶28**        We construe tax statutes by giving words their plain and ordinary meaning. *Wilderness World,* 182 Ariz. at 198.  When construing the statutes relating to the TPT, we read them together as a whole.  *SolarCity*, 243 Ariz. at 480 ¶ 8.  And we construe such statutes in favor of the taxpayer and against the government.  *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447 ¶ 10 (2004).

**¶29**        We first address Dove Mountain's various characterizations of Reimbursements as "post-tax" reserves, returns of capital, or bank deposits.  Importantly, when Dove Mountain purchases Points for a

Member, they are credited to the *Member's* account and are held for the benefit of the Rewards Program, not Dove Mountain. And, as noted, Points are redeemed at the direction of a Member. A Member can redeem Points at Dove Mountain, at other participating hotels, or with Affiliate Partners offering a wide variety of other services or merchandise. Dove Mountain has no control over Points that are purchased and credited to a Member's account. Thus, when Dove Mountain receives Reimbursements from the Rewards Program, there is no way to know whether the Reimbursements are sourced from Remittances it previously paid to Marriott Rewards.

¶30 In support of the characterization that Reimbursements are transfers of reserves or a return of capital from funds held by Marriott akin to monies on deposit with a bank, Dove Mountain points out that, in the event of program termination, funds paid to Marriott Rewards through Remittances would be returned. In the event of a termination of the Rewards Program, the Participation Agreement provides that Marriott Rewards "shall distribute any remaining Excess Funds to Participating Hotels that were participants in the Rewards Program at the time of its termination and shall allocate the Excess Funds to the Participating Hotels in a fair and reasonable manner, as determined by [Marriott Rewards] in its reasonable discretion." However, unlike a bank account, there is no acknowledgment of any account or account balance by participating hotels or reference to amounts previously remitted or maintained on behalf of any participating hotel. Any post-termination distribution of funds is based on Marriott Rewards' "reasonable discretion." Thus, Dove Mountain does not have an identifiable or quantifiable interest in Remittances once they are paid to Marriott Rewards, and Remittances are not held for Dove Mountain's benefit.

¶31 Lastly, before applying the TPT statutes to the Reimbursements, we note that Dove Mountain conceded in its motion for summary judgment and acknowledged at oral argument before this Court that certain "excess" Reimbursements "may be from Points-earning activities that were not included in an Arizona hotel's taxable gross receipts at the time of the original point-earning transaction. Therefore, Dove Mountain is willing to concede that the excess Reimbursements are subject to lodging TPT."

**¶32**　　　　Dove Mountain's willingness to pay TPT on the amount of Reimbursements that exceed the amount of Remittances—but not pay TPT on amounts less than Remittances—requires a distinction in the type of gross income derived by Dove Mountain from its lodging business that Arizona's TPT statutes do not make. And for us to recognize such a distinction, we would have to effectively rewrite the TPT statutes to create a category of "new" or "net" gross income and provide a method for properly categorizing Reimbursements. That is beyond the constitutional role of this Court. *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 574 ¶ 25 (1998) (noting that "our cases have long recognized the limitations imposed by article III [of the Arizona Constitution] on exercising judicial power in tax matters"); *see also Ariz. Sch. Bds. Ass'n v. State*, 252 Ariz. 219, 229 ¶ 45 (2022) ("[W]e heed our constitution's fundamental premise that the division of powers necessarily impels judicial restraint, particularly in the realm of lawmaking.").[3]

**¶33**　　　　We now turn to application of the TPT statutes. As previously discussed, Dove Mountain is subject to the TPT for business activities consisting of providing lodging space. § 42-5070(A). The base for

---

[3] Accordingly, the decisions of out-of-state taxing authorities that support Dove Mountain's argument are unavailing, though we recognize that it would avoid any risk of double taxation and may very well make for sound tax policy for the legislature to consider. *See In re Marriot Int'l, Inc., Div. of Tax App. No. 821078 (N.Y. Tax App. Trib. Jan. 14, 2010), https://www.dta.ny.gov/pdf/archive/Decisions/821078.dec.pdf*; *see also* Fla. Dep't of Revenue, Transient Rental Taxes Rewards Points Programs, TIP 06A01-01 (Mar. 3, 2006), https://floridarevenue.com/taxes/tips/documents/TIP_06A01-01.pdf ("Because tax on room charges has previously been paid on the funds contributed to the central program fund, no tax is due when a participating hotel contributes more to the fund in any given month that it receives in reimbursements for that same month."); Tex. Comptroller of Pub. Accts., Pol'y Letter on Taxation of Hotel Reward Nights, No. 200405570L (May 10, 2004), https://star.comptroller.texas.gov/view/200405570L?q1=200405570L ("For reimbursements to not be taxable, hotel records must show that the hotel had paid the rewards fund at least an amount equal to a specific month's reimbursement, as well as administrative charges, prior to receiving the reimbursement.").

determining the amount of TPT due is the gross receipts measured by total sales. §§ 42-5001(7), -5070. Therefore, obtaining or using lodging space is a taxable activity that constitutes a sale when the space is provided for consideration. § 42-5001(18); *see also* § 42-5070 (levying the TPT on hotels).

¶34 The Reimbursement provided from Marriott Rewards to Dove Mountain is a transfer of monies to cover a Member's complimentary stay. Therefore, it is consideration for lodging space provided by the hotel in the course of its business activities. Our conclusion is underscored by Dove Mountain's concession that excess Reimbursements are subject to TPT. Whether excess or not, Reimbursements can only be subject to TPT if they are, in fact, consideration for a sale of lodging space for a Member's complimentary stay that results in gross income.

¶35 Thus, a Member's stay at Dove Mountain pursuant to the Rewards Program is a sale. Consequently, the "total amount of the sale [of the lodging space utilized by the Member] valued in money" constitutes Dove Mountain's gross receipts for the transaction. § 42-5001(7). Given that Reimbursements constitute the gross receipts of a taxpayer derived from business, Reimbursements are gross income, § 42-5001(4), and are therefore a part of Dove Mountain's tax base and subject to the TPT. Other taxing authorities have reached similar conclusions involving programs like the one before us. *See* Ga. Dep't of Revenue, Letter Ruling on Taxation of Hotel Rewards Points Exchanged for Accommodations, LR SUT-2015-22 (Dec. 16, 2015), https://dor.georgia.gov/document/sut-lr/lr-sut-2015-22/download (ruling that when a hotel receives a reimbursement for complimentary accommodations, "either as a payout for the Program or as an offset to contributions owed by the hotel, the reimbursement is subject to Georgia sales tax"); N.Y. Dep't of Taxation and Fin., Advisory Op. on Taxation of Hotel Rewards Points Exchanged for Accommodations, TSB-A-04(19)S (Sept. 2, 2004), https://www.tax.ny.gov/pdf/advisory_opinions/sales/a04_19s.pdf (when a "separate entity" administers a rewards program and reimburses the hotel for free stays, the reimbursements are taxable consideration).

## III. CONCLUSION

¶36 We vacate the court of appeals' opinion, although we agree with its result, and we affirm the tax court's grant of summary judgment in

favor of ADOR. Because no refund is due, we deny Dove Mountain's request for attorney fees pursuant to A.R.S. § 12-348.